UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

Terry Stephens,                                    ) C/A No.: 9:12-1376-SB-BM
                                                   )
                          Plaintiff,               )
                                                   )
vs.                                                )
                                                   )   Report and Recommendation
Commissioner of the Social Security               )
Administration,                                    )
                                                   )
                          Defendants.              )
_____  )

        The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. §405(g), seeking

a judicial review of the final decision of the Commissioner wherein he was denied disability benefits.

This case was referred to the undersigned for a report and recommendation pursuant to Local Rule

73.02(B)(2)(a), (D.S.C.).

        Plaintiff applied for Supplemental Security Income (SSI)[1] alleging disability as of

September 1, 2007 due to human immunodeficiency virus ("HIV") and hepatitis C.  (R.p. 143).

Plaintiff's claims were denied initially and upon reconsideration. Plaintiff then requested a hearing

before an Administrative Law Judge (ALJ), which was held on March 12, 2010. (R.pp. 40-57). The

ALJ thereafter denied Plaintiff's claims in a decision issued July 8, 2010. (R.pp. 27-35). The Appeals

Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the

---

[1]The definition of disability is the same for both Disability Insurance Benefits (DIB) and SSI; Emberlin v. Astrue, No. 06-4136, 2008 WL 565185, at * 1 n. 3 (D.S.D. Feb. 29, 2008); and "[a]n applicant who cannot establish that [he] was disabled during the insured period for DIB may still receive SSI benefits if [he] can establish that [he] is disabled and has limited means." Sienkiewicz v. Barnhart, No. 04-1542, 2005 WL 83841, at ** 3 (7th Cir. Jan. 6, 2005). See also Splude v. Apfel, 165 F.3d 85, 87 (1st Cir. 1999)[Discussing the difference between DIB and SSI benefits].



1

determination of the ALJ the final decision of the Commissioner. (R.pp. 1-5).

Plaintiff then filed this action in the United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be remanded for further consideration, or reversed with an outright award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

### Scope of review

Under 42 U.S.C. §405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F. 2d 640 (4th Cir. 1966)).

The Court lacks the authority to substitute its own judgement for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v.



Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

### Discussion

A review of the record shows that Plaintiff, who was forty (40) years old on the date his SSI disability application was filed, has a limited education with past relevant work experience as a warehouse worker. (R.pp. 54, 102, 144, 147). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in substantial gainful activity for which he is qualified by his age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for twelve (12) consecutive months. After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[2] of HIV, bilateral carpel tunnel syndrome, and neuropathy, thereby rendering him unable to perform his past relevant work, he nevertheless retained the residual functional capacity ("RFC") to perform light work[3] limited to occasional bilateral handling and fingering; occasional use of ladders and frequent use of stairs; frequent balancing, kneeling, stooping, crouching, and crawling; and no concentrated exposure to dangerous machinery or unprotected heights. (R.pp. 29, 32, 34).

Plaintiff asserts that in reaching this decision the ALJ erred by failing to elicit an explanation regarding a conflict in the vocational expert's testimony; by failing to give great or

---

[2] An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. §404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).



controlling weight to the opinion of Plaintiff's treating physician, Dr. Carol Kooistra; by failing to evaluate all the medical evidence, including opinions from other medical sources; and by misstating the opinion of consultative physician Dr. Gordon Early. However, after careful review and consideration of the evidence and arguments presented, the undersigned finds and concludes for the reasons set forth hereinbelow that there is substantial evidence to support the decision of the Commissioner; and that the decision should therefore be affirmed.

**(Medical Record)**

The record reflects that Plaintiff was seen by the Spartanburg Regional Healthcare System, Carolina Neurology, Regional Infectious Disease, and the Behavioral Health Center.

A.      *Spartanburg Regional Heathcare*

A review of Spartanburg Regional Healthcare's ("SRHC") records reveals that Plaintiff was seen at this facility periodically from January 2006 to October 2009. (R.pp. 190-263). Plaintiff's first visit to SRHC in January 2006 occurred after his release from the South Carolina Department of Corrections, where he had served a ten (10) year sentence for armed robbery. At that time, Plaintiff was 38 years old and had been diagnosed with HIV since 1997. Plaintiff complained at his initial visit to SRHC that he experienced occasional night sweats. (R.p. 197). A month later, Plaintiff was seen concerning his blood pressure and was continued on Lisinopril.[4] (R.p. 196). The month after that, Plaintiff again complained of night sweats. (R.p. 195). On June 5, 2006, he was noted to be "[d]oing very well. Taking meds as prescribed [with no] difficulty or side effects, [except] tingling in [his] hands and feet". (R.p. 194). On September 11, 2006, Plaintiff denied having

---

[4]      Lisinopril is a drug of the angiotensin-converting enzyme (ACE) inhibitor class primarily used in the treatment of hypertension. See http://www.drugs.com/lisonopril.html.



any problems with his medications, but complained of some low back discomfort. (R.p. 193). Three months later, which was now almost a year after his first visit, Plaintiff was seen for a yearly physical, at which the main complaint noted was back pain. (R.p. 192). In March 2007, Plaintiff reported to SRHC that he was "doing excellent," while the nurse's assessment also noted that he "look[ed] well" and was "doing well." (R.p. 191). Plaintiff was seen again three months later for a follow-up at which time he was still "feeling well" and really only complained about occasional night sweats. (R.p. 190).

In August 2007, Plaintiff was seen in the SRHC emergency room after he was injured in a car accident. It was noted he had a contusion to his chest wall and left thigh. (R.pp. 198-203). A follow-up nurse's assessment on September 21, 2007 shows Plaintiff had only spotty compliance with his medication regimen. His chief complaint was night sweats. (R.p. 258). Plaintiff was seen on January 23, 2008 complaining of back and neck pain and a headache, and was discharged with, *inter alia*, instructions to do back exercises. (R.pp. 208-211). Nurse Assessments and clinic notes for January, February, April, and July 2008 were generally unremarkable, while his strength was noted as being 5/5 (full). Although Plaintiff seeks disability as of September 2007, a notation from February 1, 2008 shows that a family member had advised SRHC medical staff that Plaintiff had "gone to work," while another notation from April 8, 2008 indicates that Plaintiff had been "laid off." (R.pp. 253-256).

B.    *Carolina Neurology*

Plaintiff was seen by Dr. Kooistra of Carolina Neurology on December 29, 2009 on referral from Plaintiff's attorney. (R.pp. 346-354). Dr. Kooistra performed nerve conduction studies on the upper and lower extremities, and opined that Plaintiff had moderate bilateral carpel tunnel

5



syndrome of the upper extremity and early sensory polyneuropathy in the lower extremity. (R.pp. 346-347). At a follow-up visit in February 2010 it was noted that, contrary to the SRHC notation of February 1, 2008, Plaintiff had advised Dr. Kooistra that he had not worked since September 2007. Examination at that time revealed no cyanosis, clubbing or edema, Plaintiff's fine motor movements were normal and symmetric, reflexes were 2 + and symmetric, and motor examination revealed normal tone, bulk and strength throughout. Gait testing demonstrated no addition weakness on heel or toe walks, tandem walk was normal, Romberg[5] was negative, and Plaintiff's gait was antalgic. (R.pp. 360-361).

Dr. Kooistra answered a questionnaire in March 2010, opining that it would be "best" to limit Plaintiff's fine and gross manipulation and handling of objects to an occasional basis during an eight (8) hour work day. (R.p. 363). In a subsequent statement dated April 20, 2010, Dr. Koostra opined that it would be difficult for Plaintiff to perform work that required him to do more than occasional walking and standing because of a "diffuse sort of neuropathy in the legs", and that he should rest his hands a third of each work day so that his carpal tunnel syndrome (which it was noted was not severe enough that Plaintiff needed an operation) did not get any worse. (R.p. 372).

*C.    Regional Infectious Disease*

Plaintiff was also seen at regular intervals at the offices of Regional Infectious Disease dating back to at least April 2008, primarily for lab work. Jennifer Schottleutner, a physician's assistant at Regional Infectious Disease, saw Plaintiff in April 2009 when he arrived for an HIV follow up visit and noted that Plaintiff had HIV infection, neuropathy, hypertension, and hepatitis

---

[5]A Romberg test is an indication of loss of the sense of position in which the patient loses balance when standing erect, feet together, and eyes closed. http://medical-dictionary.thefreedictionary.com/Romberg's+test, 2009.



C.  A physical examination found no musculoskeletal deformity with a normal posture and gait, normal pulses in all four extremities, and a normal mood and affect.  Plaintiff was prescribed Neurontin for nerve pain. (R.pp. 316-320).  P.A. Schottleutner saw Plaintiff again in July 2009 for another HIV follow-up visit.  On this visit Plaintiff complained of a rash and a sore nose, but otherwise was "doing well and [had] no other problems or complaints".  Plaintiff specifically denied having any back pain, joint pain, joint swelling, muscle weakness or stiffness, or that he had any depression or anxiety.  It was noted Plaintiff was "alert and cooperative; [had a] normal mood and affect; [and had] normal attention span and concentration."   A physical examination was unremarkable.  Plaintiff was instructed to use Lotrimin cream, apply an antibiotic ointment to his nose, pick up his prescriptions, have "nonfasting labs" performed after his appointment, and "follow up with the PA in three months." (R.pp. 311-315).

In September 2009 Plaintiff was seen again by P.A. Schottleutner complaining of night sweats, itching and suspicious lesions, foot tingling and burning, and depression and anxiety. Plaintiff denied having any back, bone or joint pain, or any myalgias.  P.A. Schottleutner believed Plaintiff suffered from dermatophytosis of the scalp and beard, and he was prescribed fluconazole.[6] (R.pp. 301-303). She saw Plaintiff again in October 2009 for complaints of a rash and itching, and depression and anxiety. She found Plaintiff to have HIV infection; allergic dermatitis; and dermatophytosis of the scalp and beard. (R.pp. 292-295). Plaintiff was also seen that day by Dr. Theodore Grieshop about his rash.  (R.pp. 296-299).  On October 21, 2009, Dr. Amanda Shugart advised Plaintiff to "get off the couch - [and] exercise instead," noting that Plaintiff had both a

---

[6]    Fluconazole is an antifungal antibiotic.   See http://www.drugs.com/search.php?searchterm=fluconazole.



treadmill and a bowflex. (R.p. 290).

When P.A. Schottleutner examined Plaintiff in November 2009 he had a rash on his face and he complained of bloody diarrhea. Plaintiff also complained that his neuropathy was "really bad lately." (R.p. 285). Plaintiff reported he suffered from night sweats, wheezing, melena,[7] heartburn, back pain, bone pain, joint pain, myalgias, a rash, itching, dryness, suspicious lesions, and foot tingling or burning which made it difficult to walk. (R.p. 286). A physical examination found Plaintiff to be generally well-developed, well-nourished, in no acute distress, with a normal appearance. The P.A. assessed Plaintiff with dermatophytosis of the scalp and beard, neuropathy, and allergic dermatitis. (R.pp. 287-88).

D.    *Behavioral Health Center*

On March 9, 2010, Plaintiff was assessed at the Behavioral Health Center by James Ruffing, Ph.D., on referral from Plaintiff's attorney. Dr. Ruffing opined that Plaintiff had a Grade Equivalency of 4th grade. (R.p. 370). It was noted that Plaintiff was educated to the 8th grade, and was placed with the Department of Juvenile Justice ("DJJ") "on and off" through his teen years. (R.p. 367). Dr. Ruffing's diagnostic impression was that Plaintiff was borderline functionally illiterate, had an adjustment disorder with depressed mood which was managed with medications, and had a history of antisocial personality behaviors and polysubstance abuse. (R.p. 370).

E.    *Consultative exams/Residual Functional Capacity*

Dr. Gordon Early performed a consultative exam on September 30, 2008. Dr. Early found Plaintiff to be "quite muscular", with full range of motion in both his upper and lower

---

[7]    Melena: the passage of dark tarry stools containing decomposing blood that is usually an indication of bleeding in the upper part of the alimentary canal and especially the esophagus, stomach, and duodenum. See http://www.merriam-webster.com/medlineplus/melena.



extremities.  Plaintiff was able to touch his toes and feet without difficulty, and could do a full squat.

Plaintiff had a "rather dense" peripheral neuropathy over the hands and legs, but had 5/5/ (full)

strength and grip.  Dr. Early assessed Plaintiff with HIV-related fatigue, and determined that he was

at maximum medical improvement ("MMI").  However, Dr. Early opined that although Plaintiff had

"[s]ignificant peripheral neuropathy probably from HIV", he did not think "this [was] impairing him

presently." (R.pp. 234-35).

F.    *State Agency Physician*

State agency physician Dr. Dale Van Slooten reviewed Plaintiff's medical records and

completed a physical residual functional capacity assessment on November 3, 2008.  (R.pp. 264-

271).  Plaintiff's primary diagnosis was HIV positive and Hepatitis C, with a secondary diagnosis

of neuropathy and hypertension. (R.p. 264).  Dr. Van Slooten found that Plaintiff could perform

medium work[8] with the ability to sit and stand and/or walk, with normal breaks, for a total of 6 hours

in an 8-hour workday. His ability to push and/or pull, including operation of hand and/or foot

controls was unlimited.  Dr. Van Slooten also found that Plaintiff had no other physical limitations

other than he could only occasionally climb ladders/ropes/scaffolds, was limited in his ability to feel

(skin receptors) [although he could engage in gross (handling) and fine (fingering) manipulation

without limitation], and he needed to avoid concentrated exposure to hazards (machinery, heights).

**(RFC Determination)**

After a review and consideration of the medical record in this case as well as the

testimony of Plaintiff and the VE, the ALJ determined that, notwithstanding Plaintiff's severe

---

[8]Medium work involves lifting no more than 50 pounds at a time with frequent lifting or
carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).



impairments of human immunodeficiency virus, bilateral carpal tunnel syndrome, and neuropathy, he retained the residual functional capacity to perform a restricted range of light work. Specifically, the ALJ found Plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently; could stand or walk, and sit, with normal breaks, for a total of 6 hours in an 8 hour workday; limited to occasional bilateral handling and fingering; occasional use of ladders, and frequent use of stairs; and limited to frequent balancing, kneeling, stooping, crouching, and crawling, with no concentrated exposure to dangerous machinery or unprotected heights. (R.pp. 29, 32).

In making these findings, the ALJ concluded that Plaintiff's testimony concerning the intensity, persistence, and limiting effects of his symptoms was not credible to the extent it was inconsistent with the ALJ's RFC assessment, noting that the only medical source of record who indicated Plaintiff had fatigue was Dr. Early, who had found that Plaintiff was not impaired, and also noting that Plaintiff had worked since his claimed disability date and had even indicated to SRHC that he was actively looking for work. Based on the evidence showing Plaintiff had a diagnosis of bilateral carpal tunnel syndrome, the ALJ found Plaintiff's RFC was limited to occasional bilateral handling and fingering, and, after reviewing the record as a whole, found that Plaintiff had some limitations with prolonged standing and walking, but not to the extent set out in Dr. Kooistra's report. The ALJ limited Plaintiff to a light exertional level, consistent with Plaintiff's own testimony that he could lift 20 pounds and walk to his sister's house, and also consistent with the opinion evidence of agency consultant Dr. Van Slooten.[9] These findings are supported by substantial evidence in the case record. See Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind

_____

[9]In fact, giving Plaintiff the benefit of the doubt, the ALJ limited Plaintiff to a light exertional level, rather than the medium work level found by Dr. Van Slooten.  (R.p. 33).



would accept as sufficient to support a particular conclusion."].

<h3 style="text-align:center">(DOT Conflict)</h3>

Plaintiff argues that in concluding that there are jobs Plaintiff can perform with his limitations, the ALJ failed to comply with SSR 00-4p, because the Vocational Expert's testimony as to jobs Plaintiff could perform with his limitations was in conflict with the requirements for those jobs as set out in the Dictionary of Occupational Titles (DOT).[10]  See (R.pp. 55-56).  SSR 00-4p requires that, before relying on VE testimony to support a disability determination or decision, the ALJ must "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VE[']s...and information in the Dictionary of Occupational Titles (DOT)....". SSR 00-4p further provides that "[w]hen there is an apparent unresolved conflict between VE...evidence and the DOT, the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE...evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the [ALJ's] duty to fully develop the record, the [ALJ] will inquire, on the record, as to whether or not there is such consistency." This process allows the ALJ to resolve any conflicts by determining if the explanation given by the VE "is reasonable and provides a basis for relying on the VE...testimony rather than on the DOT information."

The hearing record reflects that the ALJ posed a hypothetical to the VE which included all of the limitations found by the ALJ, including that the work would be limited to occasional bilateral handling and fingering. (R.p. 55).  In response to the hypothetical, the VE

---

[10]    The DOT is "a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy." Burns v. Barnhart, 312 F.3d 113, 119 (3rd Cir. 2002). "[T]he DOT, in its job description, represents approximate *maximum* requirements for each position rather than the range." See Fenton v. Apfel, 149 F.3d 907, 911 (8th Cir. 1998).



provided supplemental information and indicated the jobs of "marker" (DOT Code 209.587-034) and "cleaner" (DOT Code 323.687-014) would be available, but that the limitation to only occasional bilateral handling and fingering would erode the number of these positions available by forty percent. Id. Plaintiff argues that "[n]owhere in the testimony of the [VE] did the expert testify whether or not his testimony was consistent with the [DOT], nor was there any attempt to explain any inconsistencies. Plaintiff's Brief, p. 12; Plaintiff's Reply Brief, p. 11. However, in her decision the ALJ specifically noted the VE's testimony that Plaintiff could perform the jobs cited and that, pursuant to SSR 00-4p, this testimony was consistent with the information contained in the DOT. (R.p. 35).

Plaintiff notes that the Selected Characteristics of Occupations states that both of the jobs identified by the VE require "frequent handling," while the ALJ determined that Plaintiff could only perform "occasional bilateral handling." However, the Commissioner argues that there was no unresolved conflict between the DOT and the VE's testimony, because the VE testified that the number of these jobs would be reduced by 40 percent to account for Plaintiff's manipulative limitations. (R.p. 55). The undersigned agrees. In response to questioning by the ALJ, the VE explicitly accounted for the difference between the RFC found by the ALJ and the manipulative requirements of the jobs identified according to the DOT. (R.pp. 55-56). SSR 00-4p requires only that the occupational evidence provided by the VE be generally consistent with the occupational information supplied by the DOT, and that the ALJ must elicit a reasonable explanation for any conflict between the DOT requirements and the VE testimony only "[w]hen there is an apparent unresolved conflict . . ." between this evidence. SSR 00-4p, 2000 WL 1898704, at * 2. Here, there was no unresolved conflict, as the VE specifically addressed the effect a limitation to "occasional"



handling would have on Plaintiff's ability to perform the jobs identified. <u>SSR-00-4p</u>, at * 4 [ALJ may rely on VE's professional experience]; <u>Wilson v. Califano</u>, 617 F.2d 1050, 1053 (4th Cir. 1980)[ALJ may rely on VE opinion based on training, experience and familiarity with skills necessary to function in various jobs]; <u>Queen v. Astrue</u>, No. 10-3364, 2012 WL 1016822 at ** 3-4 (D.Md. Mar. 23, 2012)[Allowing VE's experience to account for difference in VE's opinion and information contained in DOT]; <u>Adkins v. Astrue</u>, No. 07-688, 2009 WL 899425 (S.D.W.Va. Mar. 30, 2009); <u>Zurawski v. Astrue</u>, No. 2011 WL 4529353 at * 10 (N.D.Ind. Sept. 28, 2011)["The ALJ is not required to inquire as to the source of the VE's statistical data. <u>Crawford [v.Astrue]</u>, 633 F.Supp.2d [618], 637 [(N.D.Ill. 2009)]. It is the duty of the claimant or his attorney to question the reliability of the statistics at the hearing."].

Further, even if the Court were to find that the ALJ should have been more specific in her questioning of the VE with respect to any conflict, there is no basis for a reversal under the facts of this case. <u>Fisher v. Bowen</u>, 869 F.2d 1055, 1057 (7th Cir. 1999)["No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"]; <u>Shinseki v. Sanders</u>, 129 S.C. 1696, 1706 (2009)[Party attacking the agency's determination normally has the burden of showing that an error warrants reversal of the decision]; <u>United States v. Wacker</u>, 72 F.3d 1453, 1473 (10th Cir. 1995)[Error is harmless unless it leaves one in grave doubt as to whether it had a substantial influence on the outcome of the case]. This argument is therefore without merit.

**(Treating Physician Opinion)**

Plaintiff further argues that the ALJ erred in failing to properly weigh the opinion of Plaintiff's treating physician, Dr. Kooistra. <u>Craig v. Chater</u>, 76 F.3d 589-590 (4th Cir. 1996)[noting



importance of treating physician opinion].  However, the ALJ may properly discount a treating physician's assessment if it is not supported by clinical evidence, or if it is inconsistent with other substantial evidence.  Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002)["When a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight" (citations omitted)].

Here, the ALJ specifically considered and discussed the opinion of Dr. Kooistra and gave it some weight but not controlling weight, finding that it was not consistent with her own treatment notes or with the weight of the other substantial evidence in the record. (R.pp. 33-34).  The ALJ concluded that the record "as a whole" showed that Plaintiff had some limitations with prolonged standing and walking, but not to the extent indicated by Dr. Kooistra, noting that Dr. Early found in September 2008 that Plaintiff's peripheral neuropathy was not impairing him, that Dr. Van Slooten opined that Plaintiff could stand and walk for six hours in an eight-hour workday, and that Plaintiff had himself denied difficulty walking almost a year later in October 2009 when he was examined by P.A. Schottleutner.  See (R.pp. 234-235, 265, 293).  The ALJ also cited to the records of SRHC which reflect Plaintiff had full (5/5) strength, little evidence of physical impairments of a disabling severity, and Dr. Kooistra's own treatment notes showing Plaintiff had only moderate bilateral carpal tunnel syndrome and normal strength. (R.pp. 190-263, 360-361); see also (R.pp. 290, 301-303, 311-320).  See Burch v. Apfel, 9 Fed.Appx. 255 (4th Cir. 2001) [ALJ did not err in giving physician's opinion little weight where the physician's opinion was not consistent with her own progress notes.]; Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986) [opinions of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner]; Craig, 76 F.3d at 589-590 [rejection of treating physician's opinion of disability justified where the treating



physician's opinion was inconsistent with substantial evidence of record]; <u>Richardson v. Perales</u>, 402 U.S. 389, 408 (1971) [assessment of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability]; <u>Robinson v. Sullivan</u>, 956 F.2d 836, 840 (8th Cir. 1992)[Generally conservative treatment not consistent with allegations of disability]; <u>Gaskin v. Commissioner of Social Security</u>, 280 Fed.Appx. 472, 477 (6th Cir. 2008)[Finding that evidence of no muscle atrophy and that claimant "possesses normal strength" contradicted Plaintiff's claims of disabling physical impairment]; <u>Haynes v. Astrue</u>, No. 09-484, 2010 WL 3377715 at * 3 (M.D.Ala. Aug. 25, 2010)["Muscle atrophy is an objective medical indication of pain and lack thereof in [Plaintiff] militates against the conclusion that she suffers from pain which precludes her from substantial gainful activity."]; <u>see</u> <u>also</u> <u>Cruse v. Bowen</u>, 867 F.2d 1183, 1186 (8th Cir. 1989) ["The mere fact that working may cause pain or discomfort does not mandate a finding of disability].

   While Plaintiff argues in reply that Dr. Kooistra's questionnaire opinions, *if believed*, would support a finding of disability, the ALJ was not required to accept these conclusions, particularly in light of the contrary evidence of record.  <u>Hays</u>, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence].  The job of the ALJ is to review and assess *all* of the evidence in reaching a conclusion.  <u>Mickles v. Shalala</u>, 29 F.3d 918, 925-926 (4th Cir. 1994)[In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence].  That is what the ALJ did in this case.  The decision reflects that the ALJ extensively reviewed the medial evidence in reaching her findings and conclusions, and the undersigned can discern no reversible error the ALJ's treatment of Dr. Kooistra's records and opinion in light of the evidence as a whole.  <u>Thomas v. Celebrezze</u>, 331 F.2d 541, 543 (4th Cir. 1964)[court scrutinizes the



record as a whole to determine whether the conclusions reached are rational]; <u>Bowen</u>, 482 U.S. at 146 [Plaintiff has the burden to show that she has a disabling impairment]. This argument is without merit.

**(Evaluation of the Medical Evidence)**

Plaintiff also argues that the ALJ failed to evaluate all of the relevant medical evidence, including opinions from "other" medical sources such as Physician's Assistant Jennifer Schottleutner. Plaintiff specifically references a Report on Adult with HIV Infection completed by P. A. Schottleutner on February 22, 2010, in which she found that Plaintiff reported manifestations of HIV infection *and* had marked difficulties in maintaining social functioning or marked difficulties in concentration, persistence or pace. (R.pp. 355-357). The ALJ noted Schottleutner's Medical Report, but did not find that she was a medically acceptable source according to SSR 96-2p, or that her assertions in the report were consistent with the other medical evidence of record. (R.p. 32).

Plaintiff contends that the ALJ erred when she determined that Schottleutner was not a medically acceptable source pursuant to SSR 96-2p., arguing that physician's assistants are considered "other" medical sources pursuant to 20 CFR §404.1513(d)(1), and that an ALJ "may not disregard an opinion from an "other source" merely because it is not an acceptable medical source. Plaintiff also cites to SSR 06-3p for the proposition that an ALJ "should explain the weight given to opinions from these 'other sources,'... when such opinions have an effect on the outcome of the case." <u>Plaintiff's Brief</u>, at 23. Finally, Plaintiff claims that the ALJ failed to explain what records were inconsistent with the opinion of Ms. Schottleutner. <u>Id</u>.

The Commissioner argues that the ALJ sufficiently discussed the evidence and her reasons for rejecting Schottleutner's opinion; <u>cf</u>. <u>Oldham v. Astrue</u>, 509 F.3d 1254, 1258 (10th Cir.



2007); and notes that Schottleutner's finding that Plaintiff had marked difficulties in maintaining social functioning , or marked difficulties in concentration, persistence, or pace, was inconsistent with her own clinic notes wherein she reported that Plaintiff had a normal mood and affect, normal attention span and concentration, and no depression or anxiety. (R.pp. 286-287, 294, 302, 311-320). The record also reflects that  Kirkland Smith, a licensed clinical social worker in Schottleutner's office, evaluated Plaintiff and did not report any problems with his mental health.  (R.pp. 291, 304-305).  Nor do Plaintiff's records from her medical providers assign any such limitations as were opined to by Schottleutner in her report.  (R.pp. 191, 194, 298).

The undersigned finds no reversible error in the ALJ's consideration of P.A. Schottleutner's report.  The ALJ was under no obligation to credit this opinion over those of Plaintiff's treating, consulting and evaluating physicians, none of whom had noted these limitations. Cf. Craig, 76 F.3d at 589-590 [Noting that opinions of those other than trained medical doctors are not afforded same weight as opinions of physicians]; Patton v. Astrue, No. 10-135, 2012 WL 645880 at * 7 (M.D.Ga. Feb. 6, 2012)[ALJ is not required to give significant weight to "other source" opinions.]; Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012)[Physician assistants are defined as other sources]; see SSR 06-03p [In the evaluating an opinion from a non-medical source, the ALJ must consider whether the source has provided support for the opinion and whether the opinion is consistent with other evidence].  While the ALJ could have arguably gone into a more detailed discussion of this opinion, her failure to do so was not reversible error.  Dryer v. Barnhart, 395 F.3d 1206, 1211( 11th Cir. 2005) [ALJ not required to specifically refer to every piece of evidence in the decision]; Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996) ["An arguable deficiency in opinion - writing technique is not a sufficient reason for setting aside an administrative finding where...the



deficiency probably had no practical effect on the outcome of the case"], quoting, <u>Benskin v. Bowen</u>, 830 F.2d 878, 883 (8th Cir. 1987); <u>Carlson v. Shalala</u>, 999 F.2d 180, 181 (7th Cir. 1993) [" . . . the ALJ need not evaluate in writing every piece of testimony and evidence submitted. . . .What we require is that the ALJ sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning.'"]. This argument is therefore without merit.

### (Dr. Early's Opinion)

Finally, Plaintiff argues that Dr. Early  expressed an opinion that Plaintiff had significant limitations.   Plaintiff argues the ALJ failed to correctly consider this opinion and misstated the evidence.  This argument is without merit.

Dr. Early performed a consultative examination on September 30, 2008 and found Plaintiff to be "quite muscular" with a full range of motion in both his upper and lower extremities, and full strength and grip.  While he did assess Plaintiff with significant peripheral neuropathy and HIV-related fatigue, he did not find that Plaintiff had any disabling impairment.  (R.pp. 233-235). Plaintiff argues that the ALJ misstated the seriousness of Plaintiff's fatigue as found by Dr. Early, which was reversible error.  However, the ALJ specifically addressed Dr. Early's fatigue finding, but noted that Plaintiff's other medical records failed to report any significant problem with fatigue and that Plaintiff was not experiencing side effects from medications, as well as that Dr. Early himself did not find Plaintiff to be disabled.  (R.p. 33).  The undersigned can find no reversible error in the ALJ's treatment of this evidence.

Contrary to Plaintiff's assertion, there is no indication that the ALJ misunderstood Dr. Early's opinion. The ALJ discussed this consultative examination and compared Dr. Early's opinion



18

to other medical evidence in the record, and after a review of the decision and the record in this case, the undersigned does not find that the decision reflects a failure to consider the effect Plaintiff's fatigue had on his ability to work. Bowen, 482 U.S. at 146, n.5 [Plaintiff has the burden to show that she has a disabling impairment]; Jolley v. Weinberger, 537 F.2d 1179, 1181 (4th Cir. 1976)[finding that the objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled]; Thomas, 331 F.2d at 543 [court scrutinizes the record as a whole to determine whether the conclusions reached are rational]; Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993)[ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluation the credibility of the plaintiff's subjective complaints.]. This argument is without merit. Hays, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence].

<u>Conclusion</u>

Substantial evidence is defined as "...evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.



The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

June 13, 2013
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

21

